**IMPRISONED CITIZENS UNION**

v.

**Milton SHAPP et al.**

**Civ. A. No. 70–3054.**

United States District Court,
E. D. Pennsylvania.

June 18, 1979.

Jack J. Levine, Philadelphia, Pa., for plaintiff.

J. Andrew Smyser, Deputy Atty. Gen., Harrisburg, Pa., for defendants.

OPINION

JOSEPH S. LORD, III, Chief Judge.

I.

On November 4, 1970 this § 1983 action was commenced by twenty-one plaintiffs confined by the Commonwealth of Pennsylvania in six correctional institutions. The complaint alleged that certain of defendants' practices, regulations and omissions violated plaintiffs' constitutional rights. On October 20, 1972 I certified a class consisting of the named plaintiffs and "all other persons who are now or will be incarcerated in the Pennsylvania State Correctional Institutions . . .."

Settlement negotiations were begun after definition of the class. Nearly four years later these talks culminated in the proposal of a consent decree, ultimately approved on May 22, 1978. Implementation and interpretation of that decree is a continuing task.

During the long negotiations, three of the issues raised by plaintiffs were litigated. These were: (1) the availability of adequate law libraries; (2) the lawfulness of conditions of solitary confinement at four institutions; and (3) conjugal visits. The law library issue was resolved by stipulation in late 1977. In May of 1978 I enjoined on Eighth Amendment grounds continued use of three isolation cells at the correctional institution at Huntingdon and upheld against constitutional attack the Commonwealth's prohibition of conjugal visits. *Imprisoned Citizens Union v. Shapp,* 451 F.Supp. 893 (E.D.Pa.1978). After extensive rehabilitation of the solitary confinement units, I dissolved my injunction against use of the cells on November 20, 1978. *Imprisoned Citizens Union v. Shapp,* 461 F.Supp. 522 (E.D.Pa.1978).

Jack Levine, one of several counsel to plaintiff class, now seeks an award of attor-

ney's fees and expenses. Compensation is requested pursuant to 42 U.S.C. § 1988 for time spent negotiating the consent decree and litigating the law library and Huntingdon isolation cell issues. Counsel asks for $21,156.00 in fees and $630.59 in costs. For the reasons discussed below, I will approve the claimed expenses and reduce the fee figure to $10,374.75.

## II.

■ The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, pertinently states:

> "In any action . . . to enforce a provision of section . . . 1983 . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

There is no Eleventh Amendment bar to applying the statute to litigation, such as this, in which the fee award, if any, will be paid with state funds. *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978). Thus, if plaintiffs here were prevailing parties, Mr. Levine may, in my discretion, recover counsel fees nominally from defendants, although actually from the Commonwealth.

■ Defendants do not dispute that plaintiff class was the "prevailing party" as to those issues for which compensation is now sought. On balance, the terms of the consent decree establish that plaintiffs prevailed on those questions resolved by the settlement. *Gagne v. Maher,* 594 F.2d 336 (2d Cir. 1979). Likewise, plaintiffs prevailed in the December 20, 1977 stipulation ending the law library litigation. And the injunction issued against the Huntingdon cells of course made plaintiff class the prevailing party in that pocket of this suit. Mr. Levine, then, is statutorily eligible for a "reasonable attorney's fee as part of the costs" of this action.

Section 1988 leaves to the discretion of the district court the decision whether counsel to the prevailing party should be awarded attorney's fees. The statute's animating presumption is that successful counsel should "ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." Senate Report No. 94–1011, 94th Cong. 2nd Sess., p. 4, U.S. Code Cong. & Admin.News 1976, pp. 5908, 5912. Defendants suggest no special circumstances that would rebut the presumption of an award and I can conceive of none. Accordingly, recovery of counsel fees will be allowed.

■ The next step is to determine the "reasonable" attorney's fee to be awarded. The Third Circuit, in a series of thoughtful opinions, has pioneered a formula for computing an appropriate award. *Lindy Brothers Builders of Philadelphia v. American Radiator and Standard Sanitary Corp.,* 540 F.2d 102 (3d Cir. 1976) (en banc) (*Lindy II*); *Lindy Brothers Builders of Philadelphia v. American Radiator and Standard Sanitary Corp.,* 487 F.2d 161 (3d Cir. 1973) (*Lindy I*); *Merola v. Atlantic Richfield Co.,* 515 F.2d 165 (3d Cir. 1975); *Hughes v. Repko,* 578 F.2d 483 (3d Cir. 1978). Concisely stated, the *Lindy* calculus requires first, determination of the number of hours reasonably spent on successful matters and second, determination of a reasonable hourly rate for counsel's time. Next, the hour and rate figures are multiplied to produce the much-ballyhooed "lodestar" amount. Finally, the lodestar number is adjusted, in the discretion of the court, to account for various factors, including especially the quality of counsel's work and the contingent nature of the case.

■ Application of this several-fold operation is not automatic. Judgment necessarily intrudes at each seemingly-mechanical step. Further, each determination must be critically made and discussed. An unanalyzed calculation of the lodestar is unacceptable, *Hughes v. Repko,* 578 F.2d at 487, and any adjustment of that amount also must be explained to the extent possible given the fundamentally *ad hoc* nature of such decisions. With this imperative of careful analysis in mind, I must now apply the *Lindy Brothers* family of cases to Mr. Levine's petition.

### III.

Mr. Levine has moved for summary judgment on his motion for counsel fees. Defendants, citing a section of *Lindy I, Lindy Brothers Builders of Philadelphia v. American Radiator and Standard Sanitary Corp.*, 487 F.2d at 169, insist that summary judgment is a forbidden procedure in a fee petition case. An evidentiary hearing, they argue, is a categorical prerequisite to a § 1988 award. Because only oral argument—not an evidentiary hearing—has been held here, defendants say the case is not ripe for decision. I do not agree that attorney's fee issues are beyond the scope of F.R.Civ.P. 56.

*Lindy I* does not mandate an evidentiary hearing in all cases. The *Lindy* language in which defendants divine an exemption from Rule 56 is the following passage:

"[O]pposing interests should be afforded a hearing to provide an evidentiary basis for resolution of *disputed* factual matters . . . ." 487 F.2d at 169 (emphasis supplied).

The import of this statement could not be more plain. An evidentiary hearing is required when material facts are disputed. Necessarily, by implication, an evidentiary hearing is not required when the material facts are not in dispute. This of course is unassailable; the purpose of an evidentiary hearing being to find facts, none is needed when no facts are disputed. Neither *Lindy* nor logic precludes summary disposition of an attorney's fee petition where the facts to which the judge must apply his expertise and experience are uncontested.

Further, I find nothing peculiar in the nature of a fee petition that precludes use of a summary procedure. As defendants themselves have stated, "[a] motion for attorneys' fees [is] like any other claim for a money judgment . . . ." Defendants' Memo in Opposition to Plaintiffs' Former Counsel's Motion for an Award of Attorneys' Fees and Costs at 2. Claims for a money judgment are daily subjected to summary disposition and there is no reason why an attorney's fee petition, a species of the money judgment genus, should always be immune from that fate.

Lastly, "Rule 56 makes the [summary] procedure available in *all* actions subject to the Rules . . . ." 6 *Moore's Federal Practice* ¶ 56.02[1] at 56–25 (2nd ed.). Certainly § 1988 suits are subject to the Federal Rules of Civil Procedure. Therefore, the terms of Rule 56 apply and the petition may be treated summarily if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." As concluded in II above, Mr. Levine is entitled to some recovery. I must thus determine here whether a genuine issue is raised as to any of the facts material to the *Lindy* analysis. If none is presented, then the suit is ripe for judgment.

### IV.

The first determination required by the *Lindy* analysis is the number of hours reasonably spent on successful issues. In his affidavit, Mr. Levine lists 43 items of time, totalling 229.75 hours, spent negotiating the consent decree and litigating the law library and solitary confinement questions. Defendants do not contest this accounting of hours. Defendants' Hearing Memorandum in Opposition to Plaintiffs' Former Counsel's Petition for Attorneys' Fees at 1. There is, then, no genuine issue of fact as to the number of hours reasonably supportive of those efforts for which Mr. Levine is entitled to compensation. Rule 56 permits disposition of this question without an evidentiary hearing.

However, deciding that further evidence is unnecessary to determine the number of hours does not end the matter. Defendants' acceptance of Mr. Levine's requested time means only that there is no dispute as to "the facts to be weighed in light of the judge's expertise," *Lindy Brothers Builders of Philadelphia v. American Radiator and Standard Sanitary Corp.*, 487 F.2d at 169, not that I may accept petitioner's hours without independent scrutiny for reasonableness. Chief Judge Seitz has recently written that "*Lindy II* and *Merola II* require the district court to determine . . .

whether it was reasonably necessary to spend that number of hours in order to perform the legal services for which compensation is sought." *Hughes v. Repko,* 578 F.2d at 487. I turn now to that determination.

■ Mr. Levine entered his appearance in *Imprisoned Citizens Union v. Shapp* on December 8, 1971. In ¶ 3 of his affidavit, counsel states that he "expended in excess of three hours in connection with the litigation" before the date of his appearance. In his proposed findings of fact, however, Mr. Levine neither lists these three hours nor offers a reasonable hourly fee for his 1971 services. Because the 1971 hours are few, were logged before formal appearance and, most important, appear to have been abandoned by petitioner, I will exclude these three hours from the amount of time for which Mr. Levine will be compensated.

■ Items (1)–(4) of ¶ 3 of Mr. Levine's affidavit state 19 hours of time spent in 1972 on successfully pressed issues. Only one of these items is controversial: 10 hours for an October 18, 1972 trip to the Commonwealth's Correctional Institution at Dallas, Pennsylvania. Defendants, acknowledging that the hours were indeed spent, argue that travel time must be discounted and cite for that position *Prandini v. National Tea Co.,* 557 F.2d 1015, 1019–1020 (3d Cir. 1977) and *Norwood v. Harrison,* 410 F.Supp. 133, 142 n.10 (N.D.Miss.1976). I do not agree that *Prandini* holds that the hours here spent travelling, if reasonable, cannot be included fully in the award of attorney's fees.

Defendants' *Prandini* argument is that "non-professional" matters such as driving are not totally compensable. Their use of the adjective "non-professional" indicates that the following statement from *Prandini* is that on which they base their citation:

> "[H]ours spent on purely clerical matters, easily delegable to *non-professional* assistants, should not be valued at legal service rates." 557 F.2d at 1020 (note omitted) (emphasis supplied).

This holding does not support defendants' conclusion. "Purely clerical matters, easily delegable to non-professional assistants," are not fully included in a fee award because these tasks need not be performed by counsel. To allow undiluted compensation for an attorney's time spent on such work would be inequitable where, in the Third Circuit's phrase, "non-professional assistants" can do the work at a lesser expense.

■ Time spent driving from Philadelphia to Dallas, Pennsylvania, is significantly different. Counsel could not delegate to others the task of travelling to interview a plaintiff. Although Mr. Levine need not actually have driven the car, he obviously had to be present. Further, because not chauffeured in a limousine, Mr. Levine's necessary presence precluded him from accomplishing any billable legal work during the trip. This travel time, then, unlike the clerical work in *Prandini,* could not have been performed at a lesser expense; further, the trip cost counsel the fees that he could have earned during the hours spent on the road. The impossibility of assigning the task distinguishes *Prandini* and the lost opportunity for other work convinces me that Mr. Levine's 10 hours—a reasonable time for the lengthy drive—should be fully included here.

Defendants' citation of *Norwood v. Harrison,* in which the district court disallowed 37 hours spent travelling to depositions, is unpersuasive. First, I am of course not bound by a Northern District of Mississippi decision. And second, the ten words devoted to this issue in *Norwood* are hardly compelling. Accordingly, Mr. Levine's request for 19 hours of fees in 1972 is approved as reasonable.

Items (5)–(10) of ¶ 3 of the affidavit list 12.5 hours spent on these matters in 1973. I have reviewed each item and find that these times are perfectly reasonable.

The figures for 1974 demand discussion. Items (11)–(35) state 167.75 hours of work, 58.25 hours of the total—items (11)–(17), (19)–(23), (33)–(35)—were spent on issues that were resolved without litigation by the consent decree. Based on my familiarity

with the arduous drafting of that decree, I conclude that the 58.25 hours claimed were reasonably supportive of the final settlement and should be compensated.

109.5 of the 1974 hours—items (18), (24)–(32)—were spent on the issues actually litigated; the isolation cells at Dallas, Graterford, Huntingdon and Muncy and the adequacy of the prison law libraries. Most of these hours were spent pressing the Eighth Amendment claim. Mr. Levine tried that issue before me in 1974 and ultimately succeeded in closing the challenged Huntingdon units. Use of the Dallas, Graterford and Muncy cells was not enjoined.

█ Because plaintiff class prevailed on only one of the four cruel and unusual punishment claims, Mr. Levine cannot be compensated for all 109.5 litigation-related hours unless that entire time was reasonably supportive of the Huntingdon victory. Mr. Levine does not make that suggestion. Rather, recognizing that a reduction is needed, counsel proposes decreasing the 109.5 hours by 75%. Presumably, this percentage corresponds to that fraction of the litigation that plaintiffs lost—i. e., 3 of 4 challenges to solitary cells. Defendants express no opinion on this method of reduction.

I think that Mr. Levine's proposal is reasonable on these facts, despite a recent Third Circuit case rejecting a superficially similar approach. In *Hughes v. Repko,* 578 F.2d at 486, Chief Judge Seitz admonished against an automatic fractional reduction of the lodestar, concluding that such an approach "does not have a rational basis to commend it" because "experience in litigation teaches that there is no necessary percentage relationship between the number of claims and contentions presented in a lawsuit and the lawyer time spent on each." I am both in respectful agreement with and bound by the *Hughes v. Repko* rejection of an uncritical percentage reduction; nonetheless, that decision should not control my determination in this matter for one dispositive reason: the 75% decrease here is proposed by Mr. Levine.

█ What made the *Hughes v. Repko* reduction objectionable was that it was applied by the district court without examination and over petitioner's opposition. Application of the 75% discount in this case is at the suggestion of the attorney seeking compensation. Admittedly, the reduction here has little more substantial a rational basis to commend it than the percentage rejected in *Hughes v. Repko.* I am persuaded, however, that where petitioning counsel proposes a fractional decrease, based on the number of successful issues, and opposing counsel by silence acquiesces, the reduction may be accepted. To require that this proposal be rejected, and that I independently determine what portion of the 109.5 hours reasonably supported the Huntingdon success, would be to ignore the practical bearings of this case in vain pursuit of a theoretical consistency that trial court realities do not allow.

I thus will reduce the 109.5 hours to 27.5. These hours, added to the 58.25 approved above, give Mr. Levine a 1974 total of 85.75 compensable hours.

Items (36)–(41) of ¶ 3 of Mr. Levine's affidavit list 11 hours of time spent on prevailing issues in 1975. These claims are reasonable.

█ Item (42) requests compensation for 10 hours of "time spent at conferences with the court and other counsel for which time sheets were not kept over the period 1972–1975." In his proposed findings of fact, Mr. Levine includes this time in his 1975 hours and implicitly asks that he be paid a 1975 hourly rate for these conferences.

I will allow compensation for these 10 hours, but not at a 1975 rate. Mr. Levine's failure to keep an accurate record of these conferences is troublesome. Ordinarily, unsubstantiated claims such as these 10 hours would not be tolerated. I am willing, though, to make an exception here because I know from nearly nine years of experience with this action that Mr. Levine's claims are conservatively stated and that during the four years for which he seeks compensation Mr. Levine attended at least

10 hours of conferences that are not specifically itemized in his affidavit. The time requested is therefore reasonable.

However, in his proposed findings of fact, Mr. Levine seeks compensation for these 10 hours at a 1975 rate. This I cannot approve. Because the hours were logged over a four-year period, compensation must be apportioned over that time. Apportionment accomplishes, to the inexact extent possible here, the aim of compensating counsel at a rate current when the time was spent, rather than at the requested 1975 rate, a fee higher than those prevailing in the 1972–1974 period during which many of these 10 hours of conferences were logged. Accordingly 2.5 hours should be added to each of the 1972–1975 yearly totals.

This addition brings the approved totals to the following sums: 1972–21.5; 1973–15; 1974–88.25; 1975–13.5.

Finally, Mr. Levine's affidavit states 7.5 hours spent in late 1978 on preparation of his fee petition. No time is listed for 1979, although I am aware of at least several hours of work spent on the fee issue this year. The 7.5 1978 hours are reasonable and will be compensated.

## V.

The second determination required by the *Lindy* analysis is the reasonable hourly rate at which the reasonable hours determined above are to be compensated. Here again I find no genuine dispute of fact preclusive of application, without an evidentiary hearing, of my experience and expertise on the matter of reasonable fees.

Appended to Mr. Levine's motion for summary judgment is an affidavit from Peter Hearn, stating a reasonable hourly fee for Mr. Levine's work on the *Imprisoned Citizens Union* case. Mr. Hearn, a respected Philadelphia litigator with considerable experience in civil rights suits, concluded in ¶ 4 of his affidavit that "[i]n the years 1972 through 1978, attorneys whose qualifications and reputations within their own field were equal to that of Mr. Levine's in the civil rights field commanded hourly rates from approximately $85 in 1972 to approximately $125 in 1978." Based on Mr. Hearn's statement, Mr. Levine requests in his proposed findings of fact compensation at the following rates: 1972–$85; 1973–$92; 1974–$97; 1975–$105; 1978–$125.

Defendants offer no counter-affidavit on this issue of a reasonable hourly rate. Two reasons are advanced for this failure to rebut on the record Mr. Levine's proof of a reasonable fee. First, defendants say, an evidentiary hearing is a categorical prerequisite to an award of attorneys fees and it is therefore unnecessary to create a genuine issue of fact by counter-affidavit to avoid summary disposition. This position was rejected in III above. Had defendants timely urged this argument in answer to Mr. Levine's motion for summary judgment, fairness perhaps would require that they be given an opportunity now to counter the Hearn affidavit. However, the first response to counsel's March 1 motion for summary judgment came at the April 20 oral argument, seven weeks after the motion was filed. The tardiness of defendants' answer mitigates any potential inequity in summarily treating Mr. Levine's motion. *Cf. Blackburn v. Prudential Lines, Inc.*, 454 F.Supp. 1302, 1306 (E.D.Pa.1978) (affidavit not filed until argument untimely and not considered). Defendants' second reason for not challenging Mr. Hearn's conclusion further removes any concern that counter-affidavits should now be allowed.

Defendants say that the Hearn affidavit was not countered because that statement is addressed to a theory of setting a reasonable hourly fee inapplicable in this suit. Mr. Hearn's affidavit proceeds under the theory of *Rodriguez v. Taylor*, 569 F.2d 1231, 1248 (3d Cir. 1977), *cert. denied* 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978), that for an attorney whose practice does not involve a normal hourly billing rate, the "appropriate reference . . . [is] comparable salaries earned by private attorneys with similar experience and expertise in equivalent litigation." This approach, defendants now contend, is improper because, they say, Mr. Levine was in

private practice during the period for which he now seeks compensation and his own hourly rate should therefore be determinable and dispositive.

Defendants' contention that *Rodriguez* is inapposite here was first advanced at the April 20 oral argument on Mr. Levine's March 1 motion. Before that time, defendants had at least twice urged the applicability of *Rodriguez* to this suit, although no affidavit probative of applicable fees was filed. Defendants' Memorandum in Opposition to Plaintiffs' Former Counsel's Motion for an Award of Attorneys' Fees and Costs (filed December 11, 1978); Defendants' Memorandum in Opposition to Motion for Summary Judgment (dated February 23, 1979). The April 20 urging of the inapplicability of *Rodriguez* was devoid of any reference to supporting evidence. Indeed, not a single question about hourly rates was asked of Mr. Levine at his April 12, 1979 deposition, and the handful of inquiries about his private practice from 1972–1975 turned up nothing helpful to defendants' position.

■ I cannot accept the argument that Mr. Levine's reasonable hourly rate can be determined by reference to his actual practice during the period relevant here. Mr. Levine stated at oral argument that from 1972–1975 his compensation varied from $15 per hour for non-homicide criminal appointments to $1500 per hour for work on a grand jury appearance. The great preponderance of his cases then, as now, were civil rights suits taken on a contingent fee basis and are thus useless in determining his actual hourly rate. Having failed even to touch upon the subject in Mr. Levine's deposition, defendants cannot offer an iota of proof of an actual hourly rate from 1972–1975 and their position must be rejected.

■ By ultimately urging the inapplicability of *Rodriguez*, defendants abandoned the theory of fees on which the Hearn affidavit rests. This abandonment, coupled with the above-discussed lateness of any response to Mr. Levine's motion for summary judgment, compels a negative answer to the question whether fairness requires that counter-affidavits now be allowed. Defendants had six weeks to challenge the facts in Mr. Levine's motion for summary judgment and chose instead to urge two losing legal theories. I will now hold them to that choice and will determine a reasonable hourly fee based on Mr. Hearn's affidavit alone.

■ The $85 hourly fee that Mr. Hearn concludes is reasonable compensation for Mr. Levine's 1972 services and the $125 figure for 1978 work, while facially reasonable, upon analysis seem unreasonably high. In 1972, Mr. Levine was a 30-year old attorney, only 5 years out of law school. At the suggested rate of $85 an hour, Mr. Levine would have earned $170,000 for a 40 hour, 50 week work year. Compensation of this magnitude is excessive for a lawyer who in 1972 had been practicing less than 5 years. My experience with Philadelphia legal fees convinces me that a 1972 hourly rate of $50 is reasonable. This hourly fee would have earned for Mr. Levine $100,000 for a 40 hour, 50 week work year. Of this $100,000 amount, Mr. Levine would have netted approximately $45,000, given his estimated overhead costs of 55% of gross revenues. $45,000 a year in 1972 was generous but fair compensation for services of the high quality rendered by Mr. Levine in this suit.

Accordingly, counsel will be compensated at the following hourly rates: 1972–$50; 1973–$57; 1974–$62; 1975–$70; 1978–$90. The yearly increases are taken from petitioner's proposed findings of fact and are reasonable. Although many attorney's fees cases set only an average rate for the entire period of recovery, I prefer to use a separate rate for each year, that method being the more exact scheme of compensation.

Multiplying the approved hours by the reasonable rates and adding those products yields Mr. Levine's lodestar:

| Year | | Amount |
|------|---|--------|
| 1972 | – | $1075.00 |
| 1973 | – | 855.00 |
| 1974 | – | 5471.50 |
| 1975 | – | 945.00 |
| 1978 | – | 675.00 |
| | TOTAL | $9021.50 |

## VI.

The final determination required by *Lindy* is whether the lodestar amount should be adjusted to account for exceptional circumstances. Foremost among the numerous factors that ought to be considered in deciding whether adjustment is merited are the contingent nature of the case and the quality of counsel's work. Although adjustment, if any, is usually upward, where warranted by extraordinary reasons the lodestar amount may be reduced. *Hughes v. Repko*, 578 F.2d at 491 (Garth, J., concurring).

Defendants urge that three considerations merit a 50% reduction of Mr. Levine's $9021.50 basic award. First, defendants say, the litigation conducted by Mr. Levine was simple, consisting mostly, in his own words, of "people getting up on the witness stand and describing what the circumstances were." Second, because the closed cells were reopened five months later, the success was short-lived. And third, an unreduced recovery here would constitute an impermissible windfall to Mr. Levine.

I find these arguments unpersuasive. The Eighth Amendment issues litigated here were not easy. Of course the trial consisted largely of putting on witnesses. Most trials consist mostly of precisely that. To reduce an attorney's fee because he did no more than successfully elicit testimony would be substantially to repeal § 1988. Further, Mr. Levine here did more than simply present witnesses—if indeed such a task can be said to be simple. To prevail on the Huntingdon issue, Mr. Levine had to discern in the impressionistic swamp of cruel and unusual punishment precedents identifiable standards and present them coherently and tellingly. This was not so easy as defendants now remember and no reduction is justified on grounds of simplicity of issues.

Nor is a reduction warranted because Mr. Levine's success was short-lived. The July 1978 injunction closing the Huntingdon isolation cells was suspended in November 1978 because conditions in those units had improved enough to erase the stamp of unconstitutionality. This improvement, rather than detracting from plaintiffs' success, confirmed the importance of Mr. Levine's work. It would be absurd to reduce the award simply because defendants cured the Eighth Amendment defects after losing the litigation.

Lastly, defendants' fear that unreduced recovery here would be an unallowable windfall is unfounded. In one sense, any fee award is a windfall for Mr. Levine because he began work on this action at a time when it was widely thought that the Eleventh Amendment barred recovery of attorney's fees in a case, like this, where recovery was sought from a state. But that is not the sort of windfall award with which defendants are concerned. Recovery by a private attorney general, which Mr. Levine was here, "so lucrative as to ridicule the public attorney general," *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 719 (5th Cir. 1974), is what worries them. I do not find the undiminished lodestar so spectacular as to mock the Attorney General of the Commonwealth, who has of course defended this suit for seven years. The windfall fear, I think, is properly factored into the decision whether to augment the lodestar amount, not into the decision whether to reduce it. No reduction is justified by this concern because the basic award is, by definition and as determined in IV and V above, not overly-lucrative but rather a reasonable recovery.

Denying defendants' proposed reduction of the lodestar amount does not of course compel granting Mr. Levine's urged increase of the basic recovery. Mr. Levine endeavors to augment his award by 50%, 25% based on the contingent nature of the case and 25% based on the quality of work performed here. I do not accept Mr. Levine's proposed increase.

Every case in which attorney's fees are sought involves the possibility that counsel will not prevail and therefore will not be paid. This is because a case in which counsel is compensated regardless of success is not the proper subject of a fee petition.

The contingency factor, then, because inherent in every suit for attorney's fees, cannot always justify an increase of the lodestar amount, unless such an adjustment is to be automatic. The *Lindy* series of cases does not envision this categorical increase. Only when the contingency involved in a particular case is somehow exceptional should the basic recovery be supplemented.

 The contingent nature of this action is not, I think, unusual enough to warrant an increase. Success here, albeit uncertain, was not so remote a likelihood that counsel deserves to be compensated simply for taking the case. For over a decade, litigation of this sort has not been a stranger in the federal courts and the contingencies involved in bringing such a suit are, to a great extent, foreseeable and not extraordinary. What was exceptional here was counsel's above-mentioned willingness to take the case at a time when it was unsettled whether the Eleventh Amendment barred recovery of attorney's fees. I will return to this risk in the discussion below.

Mr. Levine's argument that a 25% increase is justified by the high quality of his work is, I think, redundant. The liberal hourly rates approved in V above assume services of the highest quality. Only the rarest sort of work would merit a 25% supplement to the ample lodestar here. Mr. Levine's services, although excellent, were not so distinguished as to justify his requested increase.

I do think, however, that Mr. Levine deserves some upward adjustment of his basic recovery. Counsel cites in support of his argument for an increase the "tens of thousands" of benefited class members, the importance of the rights vindicated and the public interest implicated in this suit. Judge Garth, concurring in *Hughes v. Repko,* noted that these considerations are proper ones:

"[I]n an award under the Civil Rights Act, . . . the district court might consider, *inter alia:* the importance of the constitutional right . . . which has been vindicated; the number of citizens who have been benefited or whose rights have been vindicated [and] the extent to which the public interest has been served." 578 F.2d at 492 n.5.

I believe that the public interest element justifies a supplement here.

Because plaintiff class consisted of all inmates present and future, of the Commonwealth's prison system, the number of persons who have benefited from Mr. Levine's efforts in this action is large. For this reason alone, an increase of the basic amount is perhaps justified under Third Circuit case law. I do not, however, much rely on that numerical consideration in this suit because the significance of constitutional litigation does not always correspond to the number of successful plaintiffs.

I am likewise not much helped here by considering the importance of the rights involved. The several interests vindicated by the consent decree, the law library stipulation and the solitary confinement litigation are unmistakably fundamental ones; indeed, they are as essential to the purpose and limits of our social contract as any embodied in the Constitution. On the other hand, I am troubled by the possibility, implicit in Judge Garth's *Hughes v. Repko* note, that I may find the rights protected here to be more fundamental than those involved in other constitutional cases. The precious rights guaranteed by the Constitution are not ranked. To distinguish among petitions for counsel fees based on the importance of the interests involved seems to me, in constitutional cases at least, to invite the creation of a hierarchy of rights—a development that wisely has been avoided for nearly two centuries.

 What convinces me that an increase in the basic recovery is appropriate here is neither the number of plaintiffs involved nor the importance of the rights vindicated, but rather the public interest that has been furthered by this action. The often-stated purpose of § 1988 is to advance the public interest in affording victims of civil rights violations effective access to the judicial process. House of Representatives

Report No. 94–1558, 94th Cong. 2nd Sess. p. 1 (1976); Senate Report No. 94–1011, 94th Cong. 2nd Sess. p. 2 (1976). This announced interest in providing access to the federal courts was significantly furthered by Mr. Levine's work.

A class action on behalf of all present and future prisoners in a state penal system is neither a glamorous nor a popular case. Plaintiffs in a suit like this are, within frequent exceptions, financially unable to retain private counsel on any other than a contingent fee basis and where, as here, injunctive relief is the essential intention of the suit, even a contingency arrangement is difficult. Further, for obvious reasons, representing clients confined in distant prisons presents frustrating logistic and legal difficulties. These factors and others convince me that when Mr. Levine took this case seven years ago he gave an experienced and persuasive voice to a wronged class that otherwise may have gone unheard. Moreover, when Mr. Levine began work on this case, the possibility of compensation from the Commonwealth was clouded by Eleventh Amendment concerns. This obstacle to retention of private counsel by plaintiffs, coupled with those just cited, underscores the contribution made by Mr. Levine to the Congressional goal of effectively opening the courts to civil rights plaintiffs.

The important public interest furthered by Mr. Levine's services should not be lightly regarded. Granted, no palpable benefit is bestowed on the Republic by the closing of three isolation cells in central Pennsylvania or by the availability to state prisoners in Philadelphia of the Federal Supplement. Nonetheless, the significance, indeed the necessity of these successes is profound.

The greatness of a society is not measured by the treatment accorded its powerful and affluent. Throughout history, these classes have fared well in humane and cruel cultures alike. Fair treatment of the vulnerable among its number is what makes a society great. When a suit such as this is successfully brought, our society advances an imperceptible but real distance towards the constitutional promise of a more perfect union. As Justice Field wrote exactly a century ago in the prisoners' rights case of *Ho Ah Kow v. Nunan,* 12 F.Cas. 252, 256 (CCD Cal.1879) (citation omitted):

> "It is certainly something in which a citizen of the United States may feel a generous pride that the government of his country extends protection to all persons within its jurisdiction; and that every blow aimed at any of them, however humble, come from what quarter it may, is 'caught upon the broad shield of our blessed Constitution and our equal laws.' "

Mr. Levine's work here has confirmed the generous pride of which Justice Field eloquently spoke. I find that his contribution justifies a 15% supplement to the basic recovery determined above. I note that some uncertainty has recently been expressed whether adjustment of the lodestar is to be worked by a multiple, a percentage or a fixed dollar amount. *AAMCO Automated Transmissions, Inc. v. Tayloe,* 82 F.R.D. 405, 416 (E.D.Pa. 1979). The 15% addition here is not meant to express an opinion on this question. I use a percentage increase only because I have used that method without controversy in the past. *See, e. g., In re Penn Central Securities Litigation,* 416 F.Supp. 907, 932 (E.D.Pa. 1976). Adding 15%, $1353.25, to the basic recovery, $9021.50, gives Mr. Levine a total of $10,374.75.

Finally, counsel asks compensation for costs in the amount of $630.59. Paragraph 5 of Mr. Levine's affidavit lists the requested cost items. I find them reasonable and will order full recovery.