YUCLAN INTERNATIONAL, INC., a Hawaii Corporation, and Yuclan Enterprises, Inc., a Hawaii Corporation, Plaintiffs,

v.

Geminiano ARRE, individually and in his capacity as Director of Finance, City & County of Honolulu; Frank F. Fasi, individually and in his capacity as Mayor, City & County of Honolulu; and the City & County of Honolulu, Defendants.

Civ. No. 79–0421.

United States District Court,
D. Hawaii.

Dec. 18, 1980.

Evan R. Shirley, Wesley H. Ikeda, Shirley & Jordan, Honolulu, Hawaii, for plaintiffs.

Edmund L. Lee, Jr., Deputy Corp. Counsel, Richard D. Wurdeman, Corp. Counsel, Honolulu, Hawaii, for defendants.

## MEMORANDUM AND ORDER GRANTING MOTION FOR AWARD OF ATTORNEYS' FEES

SAMUEL P. KING, Chief Judge.

This action was brought in September, 1979, pursuant to 42 U.S.C. § 1983 (1974),

seeking declaratory relief establishing Ordinance 79–26 of the City and County of Honolulu, Hawaii, as repugnant to the First and Fourteenth Amendments to the United States Constitution. The plaintiffs also sought preliminary and permanent injunctions against the enforcement and operation of the ordinance and all rules and regulations promulgated under it. The ordinance provided for the suspension or revocation of a license to operate motion picture theaters upon the ground that the licensee or his or her employee(s) had been convicted in the past of promoting pornography on the licensed premises in violation of the law. Such a suspension or revocation prohibited the licensee's use of the theater for one year after the revocation. Plaintiffs, corporations engaged in exhibiting public motion pictures and operating theaters in Hawaii, claimed that the ordinance imposed prior restraints on speech and expression and provided inadequate administrative procedures for determination of whether the speech and expression involved was protected by the First Amendment.

On December 21, 1979, plaintiffs filed a motion for summary judgment. Following a hearing on January 20, 1980, this Court granted partial summary judgment to plaintiffs in April of 1980. *See Yuclan v. Arre*, 488 F.Supp. 820 (D.Hawaii 1980). Between the filing of the complaint and granting of the motion for partial summary judgment, plaintiffs engaged in limited discovery. On May 23, 1980, defendants filed a notice of appeal but later withdrew the appeal. On October 3, 1980, plaintiffs filed this motion under 42 U.S.C. § 1988 (Supp. 1980), to tax attorneys' fees as costs.

Ordinance 79–26 of the City and County of Honolulu, adopted May 9, 1979, provided for "Regulating Public Shows as Defined in HRS Section 445–161"[1] through a licensing procedure. Licenses could be suspended or revoked on the grounds that:

1) The licensee has presented or permitted the presentation of an obscene, indecent or immoral public show on the licensed premises based on the standards prescribed hereinbefore.

(2) During the term of the existing license, the licensee or his employee(s) has [sic] been convicted of promoting pornography on the licensed premises in violation of HRS Sections 712–1214 to –1215; or

(3) The licensee has violated any of the provisions of this Article, HRS Sections 445–161 to –165, or any rules and regulations promulgated by the Director of Finance as authorized herein.[2]

A revocation would last for at least one year, as no owner whose license was revoked was eligible to apply for a new license until the expiration of a twelve-month period commencing from the effective date of revocation.

The ordinance further provided:

To determine whether or not a public show is obscene, indecent or immoral, the following standard which was established by the United States Supreme Court in *Miller v. California*, shall be applied:

"(1) Whether the average person, applying contemporary community standards, would find that the work taken as a whole, appeals to the prurient interest;

(2) Whether the work depicts or describes in a patently offensive way, sexual conduct such as:

(i) Representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated; or

(ii) Representations or descriptions of masturbation, excretory functions, and lewd exhibitions of the genitals; and

(3) Whether the work, taken as a whole, lacks serious literary, artistic, political or scientific value."

Where there was a proposal to refuse to issue a license, or to suspend or revoke a license, a hearing was to be given before a hearings panel consisting of three officers of the executive branch of the City and

---

1. Hawaii Rev.Stat. §§ 712–1214 to 712–1215 (1976).

2. Hawaii Rev.Stat. §§ 445–161 to 445–165 (1976).

County of Honolulu appointed by the Mayor. The hearings panel was to proceed in accordance with the requirements of Hawaii Rev.Stat. Chapter 91, with judicial review as provided in Hawaii Rev.Stat. § 91–14 (1976).

In its Order of April 22, 1980, this Court held:

> *Vance v. Universal Amusement Co.,* 48 U.S.L.W. 4273 [(445 U.S. 308) 100 S.Ct. 1156 (63 L.Ed.2d 413) (1980)] controls here. The Supreme Court ruled that two Texas statutes that "authorize state judges, on the basis of a showing that obscene films have been exhibited in the past, to prohibit the future exhibition of motion pictures that have not yet been found to be obscene" are procedurally deficient and authorize prior restraints that are more onerous than is permissible under prior decisions of the Supreme Court. It is therefore clear that Ordinance No. 79–26 is unconstitutional on its face.

.     .     .     .     .

Thus Plaintiffs are entitled to a partial summary judgment declaring unconstitutional the provisions of Ordinance No. 79–26 that permit the refusal, suspension or revocation of a license to conduct any public shows in the future on the grounds that the applicant or licensee has conducted an "obscene, indecent or immoral" public show or has been convicted of a violation of HRS [Hawaii Rev.Stat.] Sections 712–1214 to 1215 in the past.

488 F.Supp. at 821.

Plaintiffs also argued that the phrase "obscene, indecent or immoral" in Hawaii Rev.Stat. § 445–165 (1976) set forth an unconstitutional standard that could not be saved by the attempt in the ordinance to define this standard in terms of *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). This Court found the argument unconvincing as a matter of federal constitutional law.

Since the Director of Finance indicated at the hearing on the motion for partial summary judgment that there could be some changes in the ordinance or in the regulations and procedures under the ordinance, the relief to be granted as to the regulations and procedures was not clear at that time. Plaintiffs indicated at the hearing on attorneys' fees that they will move for entry of final judgment following disposition of the present motion.

Plaintiffs request this Court to award a total of at least $46,553.26 in attorneys' fees plus $1400.70 in costs. Plaintiffs further request this Court to award plaintiffs a "bonus" or "incentive" based upon the contingent nature of these fees and upon the Court's analysis of the other applicable criteria identified by the United States Court of Appeals for the Ninth Circuit in *Kerr v. Screen Extras Guild,* 526 F.2d 67 (9th Cir. 1975), *cert. denied* 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976). The request is based on a total of 421.65 hours, composed of 199.30 hours for Evan R. Shirley at $125 per hour and 222.35 hours for Wesley H. Ikeda at $90 per hour. Plaintiffs' counsel have submitted computer printouts that detail in chronological fashion the tasks performed and the hours devoted to each task.

Evan R. Shirley, primary attorney for plaintiffs, was admitted to practice in the State of Hawaii in 1972 and has been in practice in the state since then. Mr. Shirley has specialized in the practice of constitutional law, particularly in the First Amendment area, and indicates in his affidavit that during the preceding eight years he has argued in excess of sixty cases involving First Amendment rights. Wesley H. Ikeda, co-counsel, was admitted to practice in the State of Hawaii in 1976 and has been in practice in the state since then. Mr. Ikeda indicates involvement with various duties on thirty or more cases involving the prosecution of individuals accused of promoting pornography.

■ Under 42 U.S.C. § 1988 (Supp.1980),[3] this Court, in its discretion, may award

---

**3.** Section 1988 provides, in pertinent part:
In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985,

and 1986 of this title, title IX of Public Law 92–318, or in any civil action or proceeding by or on behalf of the United States of Amer-

reasonable attorneys' fees to the prevailing party. As plaintiffs indicate, the major objective of this litigation was to prevent the enforcement of Ordinance No. 74–26. This Court's order of May 15, 1980, granting in part plaintiffs' motion for summary judgment, declared some portions of the ordinance unconstitutional on their face and therefore null and void. Plaintiffs were unsuccessful in gaining the relief sought under their claims based on the obscenity definition and procedural sections of the ordinance. Plaintiffs have achieved their major objective and are prevailing parties under the statute even though the litigation has not reached final judgment, *Maher v. Gagne*, —— U.S. ——, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980); *Williams v. Alioto*, 625 F.2d 845, 847 (9th Cir. 1980); *City of Klawock v. Gustafson*, 585 F.2d 428, 431 (9th Cir. 1978); *Betts v. Coltes*, 449 F.Supp. 751, 754 (D.Hawaii 1978).

■ The legislative history of section 1988 indicates that prevailing parties ordinarily should be awarded attorneys' fees unless special circumstances render the award unjust. S.Rep.No.94–1011, 94th Cong., 2d Sess. 1, 4–5, *reprinted in* [1976] U.S.Code Cong. & Admin.News, pp. 5908, 5912. The Senate Report incorporated the holding of the United States Supreme Court in *Newman v. Piggie Park Enterprises*, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968). *See also, Aho v. Clark*, 608 F.2d 365, 367 (9th Cir. 1979); *Zarcone v. Perry*, 581 F.2d 1039, 1043 (2d Cir. 1978). No such special circumstances exist in this case and this Court finds that an award of reasonable attorneys' fees is appropriate.

■ In determining the reasonableness of a fee award, the twelve criteria listed in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974), and adopted by the Ninth Circuit in *Kerr, supra*, are considered. Those criteria are: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *See also Dennis v. Chang*, 611 F.2d 1302 (9th Cir. 1980). Failure to consider the relevant criteria constitutes an abuse of discretion, *Kerr, supra*. *See also Seymour v. Hull & Moreland Engineering*, 605 F.2d 1105 (9th Cir. 1979); *Fountila v. Carter*, 571 F.2d 487 (9th Cir. 1978); *King v. Greenblatt*, 560 F.2d 1024 (1st Cir. 1977), *cert. denied* 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978). Affidavits and memoranda submitted by plaintiffs' counsel indicate that criteria (4), (7), (11) and (12) are not relevant to a determination of reasonable fees in this case.[4] The remaining criteria are here discussed as they relate to three elements in this fee award. Those elements are (1) a reasonable hourly rate for each attorney, (2) a reasonable number of hours of work for each attorney, and (3) any bonus or incentive to be awarded.

In making this determination of reasonable fees, it is the duty of this Court to examine carefully the hourly rates and numbers of hours submitted by counsel. As the court stated in *Johnson, supra* :

---

ica, to enforce, or charging a violation of, a provision of the United States Internal Revenue Code, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

4. This Court finds also that criterion (8), the amount involved and results obtained is not relevant to this determination. Since plaintiffs sought only declaratory and injunctive relief, no monetary amount was involved. The absence of a monetary award should not be used to bar or reduce an award. Criterion (12), awards in similar cases, is considered here in the determination of reasonable hourly rates based on the customary fee and other criteria discussed *infra*.

The trial judge should weigh the hours claimed against his own knowledge, experience, and expertise of the time required to complete similar activities. If more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized.... It is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available. Such non-legal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it.

488 F.2d at 717. *See also King v. Greenblatt, supra.*

(1) Reasonable hourly rate

The skill requisite to perform the legal service properly, the customary fee and the experience, reputation and ability of the attorneys all are relevant to the determination of a reasonable hourly rate. Affidavits submitted by plaintiffs' counsel indicate that Mr. Shirley's usual hourly rate for First Amendment litigation is $125 per hour and Mr. Ikeda's $90 per hour. In this Court's view, those hourly rates are unreasonable for an award in this case.

Mr. Ikeda was admitted to the bar only four years ago and has been involved primarily, though not exclusively, with First Amendment litigation. His affidavit indicates that he has been involved with only three such cases in federal court. Mr. Shirley has been a member of the bar for eight years and also has been engaged primarily in First Amendment and other constitutional law cases. This and other experience qualify him as a specialist in the First Amendment area. However, these qualifications do not lead to the conclusion that the hourly rate requested is reasonable since these qualifications were not requisite to performing properly the legal services in this case.

■ Close examination of the computer printouts which detail, in chronological fashion, hours devoted to different kinds of tasks in this case, convinces this Court that much of the work devoted to this case could have been adequately performed by attorneys or law clerks who are paid at a significantly lower rate. *See Souza v. Southworth,* 564 F.2d 609, 613 (1st Cir. 1977). However, the numerous tasks performed and hours devoted to the case make it impossible to assign a different hourly rate to each type of task. Therefore, the hourly rate for each attorney is reduced to reflect an average rate for all the work performed. Considering the skill requisite to performing the legal services properly, the customary fees in Hawaii, the experience, reputation and ability of the attorneys and varying levels of ability and specialization needed to perform properly all the various tasks lead this Court to conclude that reasonable hourly rates are $75 for Mr. Shirley and $50 for Mr. Ikeda.

(2) Reasonable Number of Hours

The time and labor required and the novelty and difficulty of the questions involved are relevant to determining a reasonable number of hours for work on this case. These criteria must be considered in light of the relative simplicity of the issues in this case. By providing for suspension or revocation of licenses for a period of one year based on a single showing of a motion picture found to be obscene, the ordinance at issue clearly imposed an unconstitutional prior restraint. Counsel submitted copies of testimony given before the City Council of Honolulu that included many references to the unconstitutionality of the ordinance. The mayor of the City and County of Honolulu, Frank F. Fasi, indicated his view that the ordinance was not on firm ground and that he expected the courts to declare it unconstitutional. This is not to say that plaintiffs should be penalized because the ordinance was passed despite such comments. The point simply is that the number of hours devoted to preparing the case and presenting it to this Court are unreasonably high given the fact that the ordinance was recognized as probably unconstitutional simply from preparation done for

testimony given by plaintiffs' counsel and others.

Plaintiffs' counsel concedes that the facts presented to the Court were not complex but contends that the legal issues were novel and difficult. Plaintiffs' counsel also contends that because this case was litigated prior to the decision in *Vance v. Universal Amusement Co.*, 445 U.S. 308, 100 S.Ct. 1156, 63 L.Ed.2d 413 (1980), the case law was not entirely on the side of plaintiffs and counsel felt it necessary to present "a complete analysis of all significant authority." While this Court does not want to discourage quality legal work and has no disagreement with plaintiffs' counsel that the work was of high quality, it is not convinced that all of the hours submitted were reasonably necessary to prepare and present the case. In particular, the hours submitted for the preparation of briefs and memoranda is excessive. By this Court's calculations, 132 hours of a total of 222.35 hours expended by Mr. Ikeda were devoted to the drafting and redrafting of briefs and memoranda and 104 of the total of 199.30 hours expended by Mr. Shirley were devoted to the same tasks. Approximately 235 hours were expended on brief and memoranda preparation in a relatively simple case that was decided on summary judgment. An example of this "overlawyering",[5] is plaintiffs' supplemental memorandum to their motion for summary judgment, a document in excess of 100 pages in length exclusive of exhibits and affidavits.

After careful examination of the computer printouts submitted by plaintiffs' counsel, this Court finds that the hours devoted to preparation of briefs and memoranda must be reduced by a factor of one-third. The total number of hours to be compensated for the preparation of briefs and memoranda is 70 for Mr. Shirley and 90 for Mr. Ikeda. Adding these hours to those devoted to other tasks leads to a total of 165.30 hours for Mr. Shirley at $75.00 per hour for a total of $12,397.50, and a total of 180.35 hours for Mr. Ikeda at $50.00 per hour for a total of $9,017.50. Based on a reasonable hourly rate multiplied by a reasonable number of hours, the total amount in attorneys' fees to be awarded is $21,-415.00.[6]

(3) Bonus or incentive

Plaintiffs' counsel contend that a bonus or incentive should be added to this "lodestar" figure based on the contingency nature of the fee and the undesirability of the case. Counsel agreed to represent plaintiffs in this case without fee with the expectation that if plaintiffs prevailed a fee award might be made. In that sense, this case was taken on a contingency basis. This "contingency" factor, criterion (6) in the *Johnson* analysis, has been characterized as the risk of nonrecovery.[7] Where this criterion is suggested as a proper basis for adding a bonus or incentive, the following analysis is appropriate:

> If viewed from the perspective of a reasonable attorney looking at the case from its outset, success was virtually assured, there has been no significant risk and there should be no adjustment. If the court concludes that success was more likely than not at the outset, an increase in the fee award in the range of fifty percent would be appropriate. Where the court concludes that the chance of success was about even at the outset, an increase in the hourly rate in the range of 100% appears appropriate. Finally, if the case appears unlikely to succeed when initiated, an increase of the basic hourly rate of up to 200% may be justified to compensate the attorney for the substantial risk undertaken.[8]

---

**5.** "Overlawyering" is the term applied in Berger, Court Awarded Attorneys' Fees: What is "Reasonable"? 126 U.Pa.L.Rev. 281 (1977).

**6.** This figure is equivalent to the "lodestar" in the terminology applied by the Third Circuit. *See Lindy Bros. Bldrs. v. American Radiator &* *Standard Corp.*, 540 F.2d 102, 112 (3d Cir. 1976). *See also Copeland v. Marshall*, 641 F.2d 880 (D.C.Cir.1980).

**7.** *See* Berger, *supra* note 5.

**8.** *Id.* at 326.

As discussed earlier, success at the outset was virtually assured for this case and contingency does not justify adding a bonus or incentive to the amount calculated above. Neither does plaintiffs' counsel cite characteristics of the case which render it "undesirable" to the extent necessary to justify adding a bonus. Further, as the court pointed out in *Imprisoned Citizens Union v. Shapp*, 473 F.Supp. 1017, 1027 (E.D.Pa.1979), in cases where a fee award is sought under section 1988, the contingency is inherent and only in cases where the contingency is exceptional should the attorneys be awarded a bonus.[9]

Accordingly, IT IS HEREBY ORDERED that plaintiffs' motion to award attorneys' fees is GRANTED and fees are awarded in the amount of $12,397.50 to Evan R. Shirley and $9,017.50 to Wesley H. Ikeda for a total of $21,415.00 in attorneys' fees plus costs in the amount of $1,400.70.

---

**9.** For example, the court in *Imprisoned Citizens* awarded a bonus of 15% based on the furtherance of the public interest as a result of the case, a class action on behalf of all present and future prisoners in the state penal system.