649 F.2d 748
 Susan KEKAI, Plaintiff-Appellee, Cross-Appellant,
v.
Ruby HARGRAVE, Personally and in her capacity as Executive
Director Honolulu Community Action Program, Inc.,
Honolulu Community Action Program, Inc.,
Defendants-Appellants, Cross-Appellees.
 Nos. 79-4418, 79-4457.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 9, 1981.
Decided June 29, 1981.
 
 Clayton C. Ikei, Honolulu, Hawaii, for Kekai.
 Clayton C. Ikei, Honolulu, Hawaii, for Hargrave.
 Appeal from the United States District Court for the District of Hawaii.
 Before CHOY and ALARCON, Circuit Judges, and BONSAL,* District Judge.
 PER CURIAM:
 
 
 1
 Appellants Ruby Hargrave and Honolulu Community Action Program (HCAP) appeal from a district court judgment in favor of Susan Kekai. We reverse.
 
 I. Facts
 
 2
 Appellee Kekai was employed by HCAP in a secretarial position in November 1973.[1] In June 1975, she was promoted to the administrative position of Area Coordinator of the Head Start Program, with a corresponding salary increase from $600 to $977 per month. Authorization of the salary increase required approval of a salary waiver from the Department of Health, Education and Welfare (HEW). HCAP filed a waiver request with HEW and concurrently increased appellee's salary approximately 19 percent, which was within HCAP's power. Kekai successfully completed her six-month probationary period and in December became a non-probationary employee of HCAP.
 
 
 3
 On January 7, 1976, HEW denied HCAP's salary waiver request for Kekai, notifying HCAP that Kekai did not meet the minimum requirements for the position. The minimum requirements for the Area Coordinator position were:
 
 Requirements for Area Coordinator:
 
 4
 (1) Ideally, a Bachelor's Degree in education, Early Childhood Education, and/or Social Services.
 
 
 5
 (2) At least two (2) years experience in the following fields:
 
 
 6
 Social Services in low-income communities which provide the knowledge of the needs of the pre-school child and his family or in early childhood education.
 
 
 7
 (3) Additional qualifying experience may be substituted for required education.
 
 
 8
 Of these requirements, Kekai's only qualification for the position was the 17 months that she served as a health services secretary for HCAP. On her resume and job application for the secretarial position Kekai claimed receipt of a college degree from the University of California, Los Angeles (U.C.L.A.). She has been unable to produce any evidence that she obtained this degree. A subpoena to the U.C.L.A. registrar produced records showing that Kekai had been enrolled in two U.C.L.A. extension courses. She withdrew from both classes. There was no record of Kekai ever having been a regular student at the university.
 
 
 9
 HCAP appealed HEW's refusal of the salary waiver. Appellant Hargrave became Executive Director of HCAP in May 1976. On June 7, 1976, Hargrave withdrew the pending appeal without prior notice to Kekai or the directors of HCAP. Hargrave was apparently motivated by a fear that HEW would reduce HCAP's Head Start funding because HEW considered Kekai unqualified to be Area Coordinator. Hargrave personally believed Kekai was not qualified when promoted. The appeal was then dismissed by HEW with prejudice.
 
 
 10
 On June 18, 1976, Hargrave met with Kekai and informed her that the appeal had been withdrawn. Kekai was offered her former secretarial position, contingent upon her acceptance prior to July 14, 1976. That deadline was subsequently extended twice with a final deadline of August 31, 1976. Hargrave agreed to ask HEW to reconsider its contention that Kekai was unqualified, but HEW continued to maintain its position.
 
 
 11
 On July 21, 1976, the Head Start Policy Council referred the matter of Kekai's termination to its personnel committee. On August 9, 1976, the Head Start personnel committee met separately with Hargrave and Kekai after Kekai requested an informal meeting. Kekai apparently was not informed that she could call witnesses, but she was not prevented from presenting evidence.
 
 
 12
 On August 19, 1976, the Head Start Policy Council approved the personnel committee's finding that Kekai was not formally qualified to be Area Coordinator at the time she was hired. Based on her performance since her appointment, however, the committee recommended that Kekai be retained.
 
 
 13
 On August 26, 1976, the HCAP Board of Directors voted against a motion to retain Kekai, leaving the matter to Hargrave for final disposition. Hargrave wrote Kekai on August 30, 1976, restating Kekai's option to either accept the secretarial position or face termination. Kekai was terminated on August 31, 1976.
 
 
 14
 On September 8, 1976, Kekai filed this action against Hargrave, personally and in her capacity as HCAP's Executive Director; HCAP; and several federal defendants seeking reinstatement, back pay and damages for the violation of her civil rights. HCAP filed a motion for partial summary judgment on the ground, inter alia, that Kekai had no property interest in her position as Area Coordinator and thus no right to a hearing prior to her termination. Kekai filed a cross-motion for partial summary judgment against HCAP on the ground that by terminating her without a hearing, HCAP had violated her right to procedural due process of law.
 
 
 15
 The judge granted partial summary judgment in favor of Kekai against the federal defendants but denied all other motions for summary judgment. The court held that Kekai became a non-probationary (permanent) employee of HCAP on or about December 5, 1975, that she had a constitutionally-protected property interest in her position as Area Coordinator, and that Kekai was in effect terminated, for the purpose of applying the due process clause, when she was offered the exclusive alternative of accepting her former secretarial position or being discharged.
 
 
 16
 The federal defendants entered into settlement negotiations resulting, on April 13, 1979, in a stipulation for dismissal upon payment of $10,000 to Kekai, plus costs accrued.
 
 
 17
 On May 1, 1979, Judge Schwarzer partially granted Kekai's motion in limine, ruling that Hargrave could testify about the basis for her actions in terminating Kekai, including her understanding of Kekai's lack of proper qualifications for the position of Area Coordinator, if that was part of her state of mind, but that evidence of Kekai's lack of a college degree could not be introduced to show that Kekai was not qualified at the time of her promotion because it was irrelevant and prejudicial. The court ruled that the only question before the court was whether a constitutionally-adequate hearing was provided plaintiff, or whether she waived the right to such a hearing.
 
 
 18
 On May 7, 1979, the court entered a directed verdict for Kekai holding HCAP liable for violating Kekai's right to a hearing in connection with her termination. Later the jury found for Kekai on her claim that Hargrave and HCAP violated her constitutional right to a hearing. The jury awarded damages of $23,720 against HCAP and $500 against Hargrave.
 
 
 19
 The court granted Kekai's motion assessing costs and attorneys' fees against the HCAP jointly and severally pursuant to 42 U.S.C. § 1988.
 
 
 20
 HCAP and Hargrave moved to amend the judgment, contending that Kekai's $10,000 settlement from the federal defendants should reduce the jury award both having arisen from the same factual setting. That motion was denied.
 
 
 21
 An amended bill of costs in the amount of $22,757.90 and an amended judgment and certification of final judgment were filed.
 
 
 22
 HCAP and Hargrave appeal and Kekai cross-appeals.
 
 II. Issues
 A. HCAP and Hargrave Appeal
 
 23
 1. Did the district court err in granting a directed verdict against the HCAP on the ground Kekai was denied due process by HCAP's failure to provide a constitutionally-adequate hearing?
 
 
 24
 2. Did the district court err in excluding as prejudicial HCAP and Hargrave's evidence that Kekai was unqualified for the job?
 
 
 25
 3. Is the jury verdict of $12,000 in general damages and $23,720 in special damages excessive?
 
 
 26
 4. Did the district court err in the amount of attorney's fees awarded?
 
 B. Kekai Cross-Appeal
 
 27
 1. Did the district court err in instructing the jury that Kekai had the burden of proving Hargrave's bad faith in denying Kekai a hearing?
 
 III. Violation of Kekai's Due Process Rights
 
 28
 In order to demonstrate that her due process rights have been violated, Kekai must show that she had a property interest in her continued employment as Area Coordinator. To have a property interest in that job, Kekai must have more than an abstract need, desire or unilateral expectation of continued employment. She must, instead, have a legitimate claim of entitlement to it. Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).
 
 
 29
 The district court found that Kekai had a constitutionally-protected property interest in her position as Area Coordinator. We disagree. We find that Kekai had no constitutionally-protected property interest in employment she obtained through a deliberate and clearly material misrepresentation as to her only qualification for it. The requirements for the Area Coordinator position were:
 
 Requirements for Area Coordinator:
 
 30
 At least two (2) years experience in the following fields:
 
 
 31
 Social Services in low-income communities which provide the knowledge of the needs of the pre-school child and his family or in early childhood education. Additional qualifying experience may be substituted for required education.
 
 
 32
 Kekai did not have two years experience in the field. Thus, her claimed receipt of the college degree was her only possible qualification for the position. In all the time this case has been litigated, Kekai has been unable to produce any evidence that she was ever enrolled in a regular student program at U.C.L.A. The university's records clearly show that she never received a degree from the university and her entire attendance at the school consisted of enrollment in two extension courses from which she withdrew and therefore received no credit. Given these facts and after a careful review of the extensive record in the case, we find no other plausible conclusion but that Kekai intentionally misrepresented to HCAP that she had received a college degree.
 
 
 33
 In Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548, the Supreme Court discussed the attributes of "property" interests protected by procedural due process.
 
 
 34
 He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.
 
 
 35
 Under the facts and circumstances of this case, Kekai had no legitimate entitlement to continued employment in a position she obtained as a result of a deliberate and material misrepresentation. She had no property interest protected by procedural due process and therefore there was no due process violation committed by either HCAP or Hargrave. The district court erred as a matter of law in reaching a contrary conclusion and the judgments entered against HCAP and Hargrave must be reversed.[2]
 
 IV. Attorneys' Fees
 
 36
 The district court awarded $823.90 in costs and $21,434 in attorneys' fees to Kekai's attorneys pursuant to the Civil Rights Attorneys' Fees Awards Act of 1976, 42 U.S.C. § 1988. This section provides that in a civil rights case the district court "in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." On our determination that the district court erred in allowing Kekai to prevail, we also reverse the award of attorneys' fees and costs.
 
 V. Other Issues
 
 37
 As a result of our holding that Kekai had no property interest protected by due process, it is unnecessary for us to reach the other issues presented by the parties.
 
 VI. Conclusion
 
 38
 Appellee Kekai obtained her position as Area Coordinator after deliberately misrepresenting to HCAP that she had received a college degree. Thus, Kekai had no property interest in continued employment that is protected by procedural due process. The district court erred as a matter of law in ruling for Kekai. The judgment of the district court is
 
 
 39
 REVERSED.
 
 
 
 *
 The Honorable Dudley B. Bonsal, Senior United States District Judge for the Southern District of New York, sitting by designation
 
 
 [1]
 HCAP is a non-profit organization responsible for the administration of a number of programs for low-income residents of Oahu. One such program is Head Start, which was primarily funded by the Federal Department of Health, Education, and Welfare Department (HEW), pursuant to 42 U.S.C. §§ 2928 et seq
 
 
 [2]
 Kekai argues that HCAP knew that she could not verify her claimed receipt of the college degree before she became a permanent employee. The fact that some persons at HCAP may have known or suspected the truth before Kekai was terminated does not change our result