Lynne FEHER, Plaintiff,

v.

DEPARTMENT OF LABOR AND INDUS-
TRIAL RELATIONS; Joshua Agsalud,
in his official capacity as Director of
Department of Labor and Industrial Re-
lations; Yukio Kagawa, individually and
in his official capacity as administrator
of the Enforcement Division of Depart-
ment of Labor and Industrial Relations;
Alan Asao, individually and in his offi-
cial capacity as supervisor of the Wage
and Hour Section of the Enforcement
Division of Department of Labor and
Industrial Relations; Paul Condry, indi-
vidually and in his official capacity as
supervisor of Child Labor and Wage
Claims Section of the Enforcement Divi-
sion of Department of Labor and Indus-
trial Relations; and Beatrice Suemori,
individually and in her official capacity
as personnel officer of Department of
Labor and Industrial Relations, Defend-
ants.

Civ. No. 78–0437.

United States District Court,
D. Hawaii.

March 17, 1983.

Shelby Anne Floyd, Paul, Johnson & Alston, Honolulu, Hawaii, for plaintiff.

Edward Correa, Philip S. Uesato, Mario R. Ramil, Barbara Ann Motoyama, Deputy Attys. Gen., Dept. of Labor & Indus. Rel., Honolulu, Hawaii, for defendants.

## MEMORANDUM OF OPINION AND ORDER REGARDING PLAINTIFF'S APPLICATION FOR INTERIM ATTORNEYS' FEES AND COSTS

FONG, District Judge.

### Factual Background

This Memorandum of Opinion and Order is addressed to the question of the appropriate amount of attorneys' fees and costs to be awarded to the law firm of Paul, Johnson and Alston, the private attorneys representing a caucasian female in an employment discrimination suit, brought under Title VII of the Civil Rights Act of 1964, §§ 701 et seq., Pub.L. No. 88–352, 78 Stat. 255 (1964), as amended, 42 U.S.C. §§ 2000e et seq. (1976) (codified at 42 U.S.C.A. §§ 2000e et seq.) (1981) [hereinafter cited as "Title VII"] against the State of Hawaii Department of Labor and Industrial Relations [hereinafter cited as "DLIR"] for discriminatory employment practices in favor of Japanese-American males.

The issues of liability and damages were bifurcated for trial, and the liability issues have been fully tried by the Court. All other claims were voluntarily dismissed August 31, 1981.

In its Findings of Facts and Conclusions of Law filed February 8, 1982, the Court [Chief Judge Harry E. Claiborne, District of Nevada] found that DLIR violated Title VII by discriminating against plaintiff on the basis of her sex and race. The Court granted plaintiff's request for retroactive promotion (including backpay and all employee benefits) as though she had been promoted to the position of Labor Law Enforcement Specialist I in November, 1975. The parties have submitted affidavits, exhibits and memoranda on plaintiff's application for interim attorneys' fees and costs and that issue is now before the Court for decision.

### STATUTORY SCHEME

It has been firmly established that a prevailing plaintiff in a Title VII civil rights action may be awarded attorneys' fees. *Christiansburg Garment Co. v. E.E.O.C.,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978); *Sotomura v. County of Hawaii,* 679 F.2d 152 (9th Cir.1982); *Department of Ed. v. Valenzuela,* 524 F.Supp. 261 (D.Haw. 1981). Title VII allows a prevailing party to receive from the loser a reasonable attorney's fee in addition to other relief. The fee provision of Title VII provides:

> In any action or proceeding under [Title VII] the court, in its discretion, may allow the prevailing party, other than the [Equal Employment Opportunity] Commission or the United States, a reasonable attorney's fee as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

42 U.S.C. § 2000e–5(k) (1976).

There are two strong equitable reasons favoring an attorney's fee award to a prevailing Title VII plaintiff. The first is because plaintiff is regarded as "a private attorney general vindicating a policy that Congress considered of the highest priority," *Newman v. Piggie Park Enterprises,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968), and when a district court awards counsel fees to a prevailing plaintiff, it is awarding them against a vio-

lator of federal law. *Christiansburg Garment Co. v. E.E.O.C.,* 434 U.S. 412, 413, 98 S.Ct. 694, 696, 54 L.Ed.2d 649 (1979). *See also Northcross v. Board of Education,* 611 F.2d 624 (6th Cir.1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1980).

A second purpose for the awarding of fees is to deter racial discrimination in any form or manner, *e.g., Rodriguez v. Taylor,* 569 F.2d 1231, 1245 (3d Cir.1977), *cert. denied,* 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978); *Dennis v. Chang,* 611 F.2d 1302, 1306 (9th Cir.1980); *Palmigiano v. Garrahy,* 616 F.2d 598, 600 (1st Cir.1980), *cert. denied,* 449 U.S. 839, 101 S.Ct. 115, 66 L.Ed.2d 45 (1980), and thereby obviate litigation.

## LEGISLATIVE GUIDELINES

The Court's discretion in granting of attorneys' fees is further supported by a study of the legislative history of Title VII itself. A major purpose of Title VII was to aid and to encourage plaintiffs with meritorious claims by providing, in effect, free legal services. *Carey v. New York Gaslight Club, Inc.,* 598 F.2d 1253 (2d Cir.1979), *aff'd,* 447 U.S. 54, 60, 100 S.Ct. 2024, 2030, 64 L.Ed.2d 723 (1980).

■ Although Title VII provides for awards of counsel fees at the court's discretion, the policy developed by the Supreme Court favors awards of fees to successful plaintiffs unless there are special circumstances which would render such an award unjust. *See Christianburg Garment Co. v. E.E.O.C.,* 434 U.S. 410, 416–17, 98 S.Ct. 694, 700–701, 54 L.Ed.2d 648 (1979). *See also* S.Rep. No. 94–1011, 94th Cong., 2nd Session 2–5, *reprinted in* 1976 U.S.Code Cong. & Ad.News, 5908, 5910–13.

This approach stems from a recognition that it is in the public interest to aid Title VII enforcement through private actions, and a liberal reading of the attorney's fees provision encourages this effort. (Citations omitted.)

■ Prevailing parties are to be compensated for all time "reasonably" spent, at rates comparable to those paid for similarly complex litigation. This Court is guided by S.Rep. No. 94–1011, which indicates that:

It is intended that the amount of fees awarded under [Title VII] be governed by the same standards which prevail in other types of equally complex federal litigation such as antitrust cases and not be reduced because the rights involved may be nonpecuniary in nature. The appropriate standards, *see Johnson v. Georgia Highway Express,* 488 F.2d 714 (5th Cir. 1974) are correctly applied in such cases as *Stanford Daily v. Zurcher,* 64 F.R.D. 680 (N.D.Cal.1974); *Davis v. County of Los Angeles,* 8 E.P.D. ¶ 9444 (C.D.Cal. 1974); and *Swann v. Charlotte Mecklenburg Board of Education,* 66 F.R.D. 483 (W.D.N.C.1975). These cases have resulted in fees which are adequate to attract competent counsel, but which do not produce windfalls to attorneys. In computing the fee, counsel for prevailing parties should be paid, as is traditional, with attorneys compensated by a fee-paying client, for all time reasonably expended on a matter.

S.Rep. 94–1011, *supra* p. 5 at 5913.

In 1976, Congress enacted the Civil Rights Attorneys' Fees Awards Act of 1976, 42 U.S.C. § 1988 to ensure that attorneys litigating for these private "attorneys general" receive the benefits of this remedial policy towards attorneys fees.[1] *Mid-Hudson Legal Services, Inc. v. G & U, Inc.,* 578 F.2d 34 (2d Cir.1978) (citing S.Rep. No. 94–1011, *supra* p. 5, at 5908, 5910–12). The Senate Report incorporated the precedential holding of *Newman v. Piggie Park Enterprises,* 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968) (per curiam) (counsel fees awarded to encourage plaintiffs to seek judicial relief). *See also Aho v. Clark,* 608 F.2d 365, 367 (9th Cir.1979).

---

1. The attorneys' fees provision in 42 U.S.C. § 1988 was patterned in purpose and design after 42 U.S.C. § 2000e–5(k) of Title VII; holdings in cases decided under 42 U.S.C. § 1988 may, and have been, universally applied to cases pending under 42 U.S.C. § 2000e–5(k). *Hanrahan v. Hampton,* 446 U.S. 754, 758, 100 S.Ct. 1987, 1989, 64 L.Ed.2d 670, 675 (1980).

Another purpose of Title VII was to ensure and encourage individual plaintiffs to act as private "attorneys general" in order to assert and vindicate their civil rights in the federal courts. *Northcross v. Board of Education,* 611 F.2d 624 (6th Cir.1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1980).

## DISTRICT COURT'S DISCRETION

Before turning to issues particular to the instant case, it is appropriate to set out the Court's generalized attitude and "discretion" towards the award of attorneys' fees in Title VII cases. Title VII makes the award of attorney's fees a question of discretion for the Court, reversible only for an abuse of discretion. 42 U.S.C. § 2000e–5(k) (1976).

■ The discretion of a district court in awarding fees is limited and pertains primarily to the amount to be awarded. *Hinkle v. Christensen,* 548 F.Supp. 630 (D.S. D.1982). A district judge must explain the findings and reasons upon which the award is based, including an indication of how each of the twelve factors in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974) affected his decision. *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67 (9th Cir.1975), *cert. denied sub. nom. Perkins v. Screen Extras Guild, Inc.,* 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976). *See, e.g., Harmon v. San Diego County,* 664 F.2d 770, 772 (9th Cir.1981) (*Kerr* recital insufficient without analysis).

■ The Ninth Circuit has clearly adopted the *Johnson* guidelines as appropriate factors to be considered in the balancing process required in a determination of attorneys' fees. The failure to consider the twelve *Johnson* factors constitutes an abuse of discretion. *Metcalf v. Borba,* 681 F.2d 1183 (9th Cir.1982); *Nat. Organization for Women v. Bank of California,* 680 F.2d 1291 (9th Cir.1982); *Riveria v. City of Riverside,* 679 F.2d 795 (9th Cir.1982); *Thornberry v. Delta Air Lines, Inc.,* 676 F.2d 1240 (9th Cir.1982). Many other circuits have applied the *Johnson* factors in recent cases, and those factors remain central to any fee award.

At the same time, however, "[s]imply to articulate those twelve factors does not conjure up a reasonable dollar figure in the mind of a district court judge. A formula is necessary to translate the relevant factors into terms of dollars and cents. This is particularly true because the twelve factors overlap considerably." *Copeland v. Marshall,* 641 F.2d 880, 890 (D.C.Cir.1980) (en banc).

The court in *Copeland* recognized that: "District court judges for this reason have had difficulty applying the *Johnson* factors. A common, yet understandable, fault is for the trial judge to make the conclusory statement, 'after considering each of the twelve factors in *Johnson,* I find that a reasonable fee is X dollars,' this very often leads to reversal and remand." 641 F.2d at 880. *See, e.g., Suzuki v. Yuen,* 678 F.2d 761 (9th Cir.1982) (district court reversed after using *Johnson* analysis for reduction of hourly rates).

The consequences if this Court should award an insufficient amount is all too predictable: plaintiff will move the courts to award her additional attorneys' fees for the time spent in prosecuting her appeal, and if this Court denies her motion, another motion will follow to the Ninth Circuit. As another court recently considered the subject:

Every civil right litigation will be like a nest of Chinese boxes. The outside box is the litigation of the civil rights issue itself. Within it is the litigation over the fees incurred in the litigation over the merits—ordinarily a lesser litigation, as our metaphor implies, though in this case the stakes in each of the two rounds of fee litigation have been greater, at least in monetary terms, than in the original civil rights litigation. Within the initial fee litigation will be another litigation—usually a smaller one, here again a bigger one—over the attorneys' fees incurred by the plaintiff in the initial fee litigation. And so on without necessary end.

*Muscare v. Quinn,* 680 F.2d 42, 44 (7th Cir.1982).

With these considerations in mind, the Court approaches the application aware of the controversy and importance that adequate fee awards play in the vindication of rights guaranteed by Title VII. The Court is also aware that while awards should not be used as either an additional sanction against defendants or as a windfall for plaintiff's counsel, the awards must be sufficient to make such representations financially attractive to qualified attorneys. For these reasons, in making the discretionary decisions inherent in the determination of an appropriate award, the Court has kept those considerations in mind with respect to the particular facts and circumstances of the instant case.

## APPLICANT'S PREVAILING PARTY STATUS

Before awarding attorneys' fees, the Court must determine whether applicant represents a "prevailing party". When a party obtains a verdict on all counts in a complaint, it is clear who prevailed. In the instant case, however, plaintiff has prevailed only as to liability: the question of damages remains unresolved. The question therefore arises as to whether interim attorneys' fees are appropriate where a party obtains only part of the relief requested.

In the Ninth Circuit, a party may be "prevailing" without having succeeded on all issues, and interim attorneys' fees may be awarded pursuant to Title VII. *Smallwood v. National Can Co.,* 583 F.2d 419 (9th Cir.1978); *Van Hoomisen v. Xerox Corp.,* 503 F.2d 1131 (9th Cir.1974). "The proper focus is on whether plaintiff has succeeded on the central issue, as exhibited by the fact that she has obtained the primary relief sought." *Coen v. Harrison School Board,* 638 F.2d 24, 26 (5th Cir.1981), *cert. denied,* 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 647 (1982).

The focus in determining prevailing party status is not on the form of the final judgment but on the substance of the relief. *Ross v. Horn,* 598 F.2d 1312 (3d Cir.1979), *cert. denied,* 448 U.S. 906, 100 S.Ct. 3048, 65 L.Ed.2d 1136 (1980). "Even where the victory is only the vindication of the correctness of the plaintiff's position and therefore, may be characterized as only moral vindication, counsel fees may be awarded." *Knighton v. Watkins,* 616 F.2d 795, 799 (5th Cir.1980). A prevailing party, therefore, need not have prevailed on all issues; it is sufficient that plaintiff prevail on the main issue. *See Tasby v. Wright,* 550 F.Supp. 262 (N.D.Tex.1982).

In this case, the trial to date concluded that DLIR engaged in discriminatory employment practices against plaintiff and in favor of Japanese-American males. The Court granted plaintiff her relief: retroactive promotion, backpay and all employee benefits she would have received had she been promoted in 1975. By obtaining the primary relief sought in the Complaint, plaintiff's counsel succeeded on the central issues prevalent in this case. There can be no question that plaintiff is the prevailing party, a prerequisite to an award of attorneys' fees under the civil rights statutes. *Cf. Sotomura v. County of Hawaii,* 679 F.2d 152 (9th Cir.1982) (defendants "prevailed" through technical dismissal of appeal).

## DISCUSSION & ANALYSIS

Accordingly, in calculating the reasonableness of the instant application for attorneys' fees, the Court is guided by the twelve criteria enumerated in the *Johnson* case and explicitly adopted by the Ninth Circuit in the reasoning in the *Metcalf, Nat. Organization for Women, Riveria, Thornberry* and *Kerr* cases.[2] Those criteria are:

(1) the time and labor required,

(2) the novelty and difficulty of the question,

---

**2.** The twelve factors listed by the *Johnson* court have been considered by this Court in the instant case, although not all of them have been mentioned explicitly. The textual discussion emphasizes the factors which this Court found to be the most important in the context of this case.

(3) the skill requisite to perform the legal services properly,

(4) the preclusion of other employment due to acceptance of the case,

(5) the customary fee,

(6) whether the fee is fixed or contingent,

(7) time limitations imposed by the client or the circumstances,

(8) the amount involved and the results obtained,

(9) the experience, reputation and ability of the attorneys,

(10) the undesirability of the case,

(11) the nature and length of the professional relationship with the client, and

(12) awards in similar cases.

This Court recognizes that the starting point in fee setting, characterized as the "lodestar" fee, should be computed by multiplying a reasonably hourly rate by the number of hours reasonably expended on the lawsuit. Adjustments in this figure are appropriate, the Court recognizes, but the lodestar provides the only reasonably objective starting point for awarding a fee. Moreover, it provides the only objective basis for valuing an attorney's services. *Lindy Bros. Builders, Inc. v. Am. Radiator,* 540 F.2d 102 (3d Cir.1976). The Court is not powerless to evaluate the number of hours claimed or the hourly rates charged, provided it explain its rationale for altering the attorneys' claimed charges. *Ladies Center, Nebraska, Inc. v. Thone,* 645 F.2d 645 (8th Cir.1981).

Having calculated the lodestar, the Court must then decide whether to increase it by providing an incentive bonus to plaintiff's counsel. In turn, this figure may be adjusted upward if there was a risk of non-compensation or partial compensation. In addition, the fees may be adjusted upward or downward on the basis of the quality of work performed as judged by the trial court.

## APPLICANT'S ATTORNEYS' FEES & COSTS

Throughout litigation, plaintiff has been represented by four attorneys from the law firm of Paul, Johnson and Alston. They are Paul Alston, Shelby A. Floyd, Lawrence C. Foster and James T. Paul. In addition, plaintiff seeks compensation for the services of two law clerks and three paralegals, who assisted in the preparation of motions and other documents.

On June 4, 1982, plaintiff filed a documented request for attorneys' fees and costs. The documentation reveals that plaintiff's attorneys had spent 331.3 hours on the case and that, if that time were billed at the law firm's customary hourly rates, the legal fee would be about $25,-706.50, including costs of $4,370.45 and Hawaii state sales tax (at four percent) of $1,028.26 for a total of $31,105.21.

Confronted by the explicit language of the statute and its accompanying legislative history, DLIR nonetheless contends that plaintiff is not entitled to attorneys' fees or costs by their Memorandum in Opposition to Motion for Interim Attorneys' Fees filed September 21, 1982. However, at the hearing on the motion October 29, 1982 (perhaps recognizing that the usual course is for the award of attorneys' fees to prevailing civil rights plaintiffs), defendants' counsel alternatively entered objections only as to hourly rates as well as to certain hours and expenses claimed by plaintiff. *See Carey v. New York Gaslight Club, Inc.,* 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980).

Inasmuch as the fundamental purpose of the fee award is to compensate counsel for their efforts, the first task, therefore, is to determine the amount of time reasonably expended. Segregated and tabled, the application appears thus:

| Attorney | Type of Work | Hours |
|---|---|---|
| Shelby A. Floyd | Client contact, investigation research, conferences with co-counsel | 94.5 |
| | Court Appearances and preparation | 29.2 |
| | Review and drafting of pleadings | 89.3 |
| | Depositions and preparation | 33.3 |
| | | 246.3 |
| James T. Paul | Client contact, and conferences with Ms. Floyd | 2.6 |

| Attorney | Type of Work | Hours |
|---|---|---|
| Paul Alston | Client contact, and conferences with Ms. Floyd | 1.2 |
| Lawrence Foster | Research, draft and review of fees application | 20.9 |
| **Law Clerk** | | |
| Anne Levinson | Research statistics use, citations | 5.9 |
| Kathy Kawamoto | Research use of statistics, draft and review pleadings | 45.3 |
| **Paralegal** | | |
| Gail Paris | Conference with Ms. Feher, research | 3.3 |
| Anne Willis | Research | 5.1 |
| Karen Goya | Draft and corrections | .7 |
| | Total: | 331.3 |

Compiling raw totals of hours spent, however, does not complete the inquiry. It does not follow that the amount of time actually expended is the amount of time reasonably and justifiably expended. In the private sector, "billing judgment" is an important component in fee setting, and it is no less important here. Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authorization. See Copeland v. Marshall, 641 F.2d 880 (D.C.Cir.1980) (en banc).

The Court must therefore determine whether the hours expended by each attorney are reasonable in view of the services provided. After a detailed review of the affidavits submitted and the entire record of this case, with particular emphasis on the pleadings, the Court concludes that there has been duplication of efforts at particular points in the course of the litigation, as well as inefficient use of time and excessive billings in view of services rendered. For example, the Court notes that in late 1978, James Paul, Paul Alston and Shelby A. Floyd, as lead counsel, frequently consulted with each other. It appears that Messrs. Paul and Alston, two senior partners, were largely in consultation status and that this case remained with Ms. Floyd. 1.9 of Mr. Paul's 2.9 claimed hours is duplicitous in nature and will be disallowed. For the same reason, .7 of Mr. Alston's 1.2 claimed hours is also disallowed. See Walker v. Wegner, 535 F.Supp. 415, 418 (D.S.D.1982) (court must carefully scrutinize for possible duplicitous effort).

Further, the Court concludes that there has been a lack of specificity and inadequate justification regarding parts of the application. The Court will also disallow hours claimed for "pro forma" functions ordinarily performed by secretaries but claimed as function of counsel. As other courts have noted, "its dollar value is not enhanced just because a lawyer does it." (Citations omitted.) The Court disallows Ms. Floyd's travel to New York to attend a seminar, being of the opinion that the supporting documentation does not establish the necessity of such expenses in connection with this case.

The Court finds that the time spent in pursuit of plaintiff's claim under the Age Discrimination and Employment Act is properly compensable. In the instant case, after voluntarily dismissing her age discrimination claim, plaintiff prevailed on her main issue, the Title VII claim and was awarded her relief. In Northcross, the Sixth Circuit rejected the contention that a prevailing party should not receive a fee award for issues on which it did not prevail. The Ninth Circuit has endorsed the reasoning of the Sixth Circuit. See Riveria v. City of Riverside, 679 F.2d 795 (9th Cir. 1982); Thornberry v. Delta Air Lines, Inc., 676 F.2d 1240 (9th Cir.1982); Harmon v. San Diego County, 664 F.2d 770 (9th Cir. 1981); compare Copeland v. Marshall, 641 F.2d 880, 891 (D.C.Cir.1980) (en banc) (no compensation for nonproductive time) with Manhart v. City of Los Angeles, 652 F.2d 904 (9th Cir.1981) (all reasonable claims compensable). This Court will follow the prevailing trend of authority and allow time spent pursuing the age discrimination claim to be compensable, finding such time "reasonably pursued" under the facts and circumstances of the instant case.

Accordingly, this Court finds that Shelby A. Floyd, as lead counsel, reasonably spent a total of 178.2 hours representing plaintiff against DLIR. The Court finds further that the law firm of Paul, Johnson & Alston spent a total of 58.2 hours assisting counsel. This Court notes that Mr. Foster's hours include time spent on the fee petition itself, which should not be considered for lodestar

purposes. For computation of the lodestar, the hourly component is therefore 220.4 hours.

## REASONABLE HOURLY RATES

 The remaining element in fixing a "lodestar" fee is the reasonable hourly fee. The skill requisite to perform the legal service properly, the customary fee and the experience, reputation and ability of the attorneys are all relevant to the determination of a reasonable hourly-rate. *Yuclan Intern., Inc., v. Arre,* 504 F.Supp. 1008 (D.Haw.1980). The reasonable hourly-rate is that prevailing in the community for similar work. *Nat. Ass'n of Concerned Veterans v. Sec. of Defense,* 675 F.2d 1319 (D.C.Cir.1982) (per curiam). Legal commentators have considered the reasonable hourly-rate to be the product of a multiplicity of factors.[3]

Attaching an appropriate value to an attorney's time is a subjective process, requiring the Court to take into account all intangible factors. The value of counsel's time generally is reflected in his or her normal rate of charge, which, in this case, varies from $50.00–$125.00 per hour. It follows that there may be differing reasonable hourly rates for each of the attorneys, and for the different kinds of work involved in the litigation. *Copeland v. Marshall,* 641 F.2d 880, 892 (D.C.Cir.1980) (en banc).

Ms. Shelby Floyd, lead counsel for plaintiff, has been a member of the Hawaii Bar since 1976 and specializes primarily, although not exclusively, in education and public health law; she claims no particular expertise in Title VII matters. It is unclear to this Court whether Ms. Floyd has ever tried a Title VII case. Counsel for plaintiff cites five cases in support of her claim of reasonableness of her hourly rate.[4] This Court considered similar judicial awards to determine factors considered by other courts in arriving at a reasonable fee in this case.[5]

Where plaintiff's counsel has provided support for a requested rate, the burden falls on DLIR to go forward with evidence that the rate is erroneous. Here DLIR relies primarily on the case of *Suzuki v. Yuen,* 678 F.2d 761 (9th Cir.1982) wherein the Ninth Circuit recently awarded Ms. Floyd a rate of $65.00 per hour. This Court also differentiated between office time and court or deposition time, "in view of the difference in the degree of effort, concentration and competence normally required," *Chapman v. Pacific Telephone and Telegraph Co.,* 456 F.Supp. 65, 77 (N.D.Cal. 1978).

Lawrence C. Foster, Esq. is a relatively new and inexperienced attorney but he had assisted Ms. Floyd in other civil rights type cases. Mr. Foster was a newly admitted attorney to the bar when he executed his affidavit in June, 1982. His billing in the present case is limited solely to researching

3. Berger, *Court Awarded Attorneys' Fees: What is "Reasonable"?,* 126 U.Pa.L.Rev. 281, 286–87 (1977) (footnotes omitted); *accord,* Dawson, *Lawyers and Involuntary Clients in Public Interest Litigation,* 88 Harv.L.Rev. 849–927 (1975); Note, *Promoting the Vindication of Civil Rights Through the Attorney's Fee Awards Act,* 80 Colum.L.Rev. 346, 372–73 (1980).

4. *Fujiwara v. Clark,* No. 78–0062 (D.Haw. Jan. 11, 1983) ($39,024.00 sought, $15,000.00 awarded); *Gardner v. Clark,* No. 79–0364 (D.Haw. June 4, 1982) ($18,438.99 awarded); *Lambayan v. Department of Education,* No. 81–0410 (D.Haw. Jan. 25, 1982), *appeal docketed,* No. 82–4087 (9th Cir. Feb. 10, 1982) ($3,761.00 awarded at $90.00 per hour for Shelby Floyd); *Department of Education v. Valenzuela,* 524 F.Supp. 261 (D.Haw.1981) (Title VII defendant sought $6,510.00, awarded $3,668.50 at $90.00

per hour for Shelby Floyd); *Kekai v. Hargrave,* 649 F.2d 748 (9th Cir.1981) (district court award of $19,066.69 to Shelby Floyd reversed on appeal).

5. *Suzuki v. Yuen,* 678 F.2d 761 (9th Cir.1982) ($17,071.00 sought, awarded $10,316.50 at $65.00 per hour for Shelby Floyd); *Sotomura v. County of Hawaii,* 679 F.2d 152 (9th Cir.1982) ($34,941.40 sought, $25,000.00 awarded); *Yuclan International, Inc. v. Arre,* 504 F.Supp. 1008 (D.Haw.1980) ($46,553.26 sought, $21,415.00 awarded); *Lee v. Clark,* No. 80–0418, (D.Haw. Oct. 18, 1982) ($11,657.88 awarded at $80.00 per hour for Shelby Floyd); *Chin v. Kauikeolani Children's Hosp.,* 445 F.Supp. 1375 (D.Haw.1978) (Title VII defendant awarded $3,000.00); *Ross v. Goshi,* 351 F.Supp. 949 (D.Haw.1972).

and drafting the instant application. While this Court does not feel his billing rate to be excessive, the nature of the legal work done by Mr. Foster herein leads the Court to conclude that billing twenty-one hours for such work is excessive.

Reasonable rates for paralegals and law clerks are more difficult to assess. Some courts favor payment of the actual or reasonable cost of those services. This Court, however, prefers to award a billing rate to cover salaries as well as overhead.

This Court is also persuaded that using paralegals or law clerks is cost-efficient and should be encouraged. Therefore, their time should be included in the lodestar. The Ninth Circuit has apparently approved the inclusion of such charges as part of the attorneys' fees. See *Metcalf v. Borba,* 681 F.2d 1183 (9th Cir.1982); *Riveria v. City of Riverside,* 679 F.2d 795 (9th Cir.1982); and *Thornberry v. Delta Air Lines, Inc.,* 676 F.2d 1240 (9th Cir.1982).

This Court notes further that the work of paralegals and law clerks, if performed by a lawyer, would have been more costly and that, traditionally, private firms in the Honolulu area bill clients for paralegal services. This Court determines that $25.00 per hour for law clerks and $20.00 per hour for paralegals is reasonable given the prevailing rates for paralegals and student interns. See *Chapman v. Pacific Telephone and Telegraph Co.,* 456 F.Supp. 77 (N.D.Cal.1978).

The Court therefore concludes that the following schedule shall be allowed:

| ATTORNEY | TYPE OF WORK | HOURS | RATE | FEE |
|---|---|---|---|---|
| Shelby A. Floyd | Court Appearances | 29.2 | $90. | $2628. |
| | Depositions | 24.0 | $75. | $1800. |
| | Review and drafting of pleadings | 55.0 | $70. | $3850. |
| | Client contact, invest., research & conferences | 70.0 | $70. | $4900. |
| James T. Paul | Client contact & conferences | 1.0 | $125. | $125. |
| Paul Alston | Client contact & conferences | .5 | $125. | $63. |
| Lawrence C. Foster | Research and draft fee application | 16.0 | $50. | $800. |
| Law Clerks | | | | |
| Anne Levison | Research statistics use | 5.0 | $25. | $125. |
| Kathy Kawamoto | Research statistics use, draft of pleadings | 30.0 | $25. | $750. |
| Paralegals | | | | |
| Gail Paris | Conference & preparation | 2.0 | $20. | $40. |
| Anne Willis | Research | 3.0 | $20. | $60. |
| Karen Goya | Preparation | .7 | $20. | $14. |

Thus, the "lodestar" fee is $15,155.00.

## ADJUSTMENTS TO THE LODESTAR

■ Having determined the lodestar, the Court may increase or decrease it to reflect the contingent nature of success and the quality of the attorney's work. *Lindy Bros. Builders, Inc. v. Am. Radiator,* 540 F.2d 102 (3d Cir.1976). In addition, the Court must gauge the reasonableness of the fee in light of the important substantive purposes of the Civil Rights Act upon which plaintiff relied.

Plaintiff seeks an upward adjustment or incentive bonus upward of 30% to compen-

sate for the factor of representing plaintiff on contingency, the undesirable nature of the case, the quality of the work done by counsel, DLIR's strongly contested opposition and to reward counsel for the beneficial results of the legal services. DLIR, however, asserts that an award of fees is inappropriate under Title VII because this suit involved only a single violation of private rights rather than a broad pattern of misconduct on the part of state public officials.

 One of the factors to be considered in adjusting the lodestar is the quality of the representation. An adjustment based on this factor is only appropriate when such representation has been unusually good "taking into consideration the level of skill normally expected of an attorney commanding the hourly rate used to compute the lodestar." *Copeland v. Marshall,* 641 F.2d 880, 893 (D.C.Cir.1980) (en banc). The Court could not have stated in clearer terms that an adjustment for the quality of representation should not be routinely awarded but only made in exceptional cases. "Incentive awards" are only rarely given in those appropriate cases involving novel legal issues, extraordinary factual complexity, high "risk" factors, or high quality services. *Nat. Ass'n of Concerned Vets. v. Sec. of Defense,* 675 F.2d 1319, 1329 (D.C.Cir.1982) (per curiam). When given at all, they tend to be awarded for class-action suits which benefit a large group of plaintiffs.

Title VII cases are no longer novel endeavors; attorneys have numerous guides for taking a Title VII case to completion. This case did not involve particularly novel or complicated questions of law, nor was there extensive discovery in the case.

This Court notes that the burden of establishing a prima facie case of disparate treatment based on sex is not an onerous one. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). In presiding over the two-day trial, the Court found that:

[P]laintiff's burden was to prove by a preponderance of the evidence that she had applied for an available promotion, that she was qualified, and that she was rejected under circumstances which would give rise to a reasonable inference of unlawful discrimination. After she has shown it, then the burden shifts to the defendants in this case, and they have to rebut the presumption of innocence, and I feel that they have widely missed their mark in that regard.

*Feher v. DLIR, et al.,* No. 78–0437 (D.Haw. Jan. 26, 1982). (Findings of Fact and Conclusions of Law); *see also Fadhl v. Police Dep. of City & Cty. of San Fran.,* 553 F.Supp. 38 (N.D.Cal.1982).

Although plaintiff's attorney devoted all of her time in this case in the weeks immediately prior to trial, such concentration of effort is normally in the days preceding most trials.

In the twenty-seven months between initial contact with the client and the Court's decision, there is no significant evidence that plaintiff's attorney was precluded from accepting other employment. However, the Court does reasonably infer that there was some preclusion of, or at least interference with other employment.

This Court recognizes that the contingency adjustment was designed solely to compensate for the possibility at the outset that litigation would be unsuccessful and that no fee would be obtained. This type of contingency adjustment is entirely unrelated to the contingent fee arrangement typical in tort representation. The contingency adjustment is also not a percentage increase based on the amount of recovery. *Thornberry v. Delta Air Lines, Inc.,* 676 F.2d 1240 (9th Cir.1982); *Manhart v. City of Los Angeles,* 652 F.2d 904 (9th Cir.1981); *Merola v. Atlantic Richfield Co.,* 515 F.2d 165 (3d Cir.1975).

This Court notes that the primary purpose of the present suit is to obtain equitable relief and the fee awarded should not necessarily be reduced because the monetary relief may be small. On the other hand, the Court is not persuaded that the

nonmonetary relief, i.e. retroactive promotion of a single plaintiff, can be cited as having the precedential effect as counsel would like to assert.

Finally, the Court evaluates the fee awarded herein in the light of the important substantive purposes of the Civil Rights Acts. First and foremost, this Court observes that the legal theories advanced by plaintiff's counsel were hardly novel. Her claims were founded upon established Constitutional and statutorily-defined rights. This fact, however, in no way diminishes the contribution of the action to the purposes of the Civil Rights Acts. Indeed, it would be anomalous to reason that the elimination of a persistent violation by DLIR of recognized constitutional rights is of less value than the elimination of a theretofore unacknowledged constitutional right.

However, in a statewide application of the Court's findings, there may or may not be tangible results flowing directly to the citizenry of the State of Hawaii or these United States. The consequences and effects, if any, of the instant case are uncertain and incapable of substantiation.

█ In light of the consideration of all factors herein discussed, the Court will not adjust the lodestar upward.

### APPLICANT'S COSTS & EXPERT WITNESS FEES

█ Costs are awarded to the prevailing party in civil actions as a matter of course, absent express statutory provision, unless pursuant to Rule 54(d) of Fed.R. Civ.P., the court otherwise directs. The standard of review is again abuse of discretion. *Nat. Organization of Women v. Bank of California*, 680 F.2d 1291, 1294 (9th Cir. 1982); *United California Bank v. THC Fin. Corp.*, 557 F.2d 1351, 1361 (9th Cir.1977). This Court finds that as the prevailing party, plaintiff is entitled to recover for taxable costs under Rule 54, Fed.R.Civ.P. Plaintiff also seeks expert witness fees of $1,918.01 for a statistician in addition to reproduction, transcriptions, travel and other costs totaling $4,370.45.

█ Generally, witnesses, including expert witnesses are entitled only to statutory witness fees. Rule 54(d), Fed.R.Civ.P. Defendants argue that Title VII makes no provision for payment of expenses and therefore, the award should be denied. Defendants' argument is without merit.

Because the statistician's testimony was helpful to the Court and played an important role in the ultimate resolution of the issues, the Court believes it equitable to allow plaintiff's counsel to recover her $1,918.01 fee as a cost of litigation in this case.

The Court, however, disallows "travel to consult with Mathtech" for reasons heretofore stated and because a proper reason was not stated for its validity. The Court also disallows "costs of depositions" inasmuch as there was no showing that they were used at trial or were otherwise necessary. Therefore, of the total of $4,370.45 sought, $1,540.73 is disallowed and the remainder of $2,829.72 is granted.

### CONCLUSION

Although the award of attorneys' fees against DLIR is within the discretion of this Court, it is now clear that a prevailing Title VII plaintiff should be awarded attorneys' fees unless special circumstances would render such an award unjust. (Citations omitted.) No such special circumstances exist in this case and the Court finds that an award of reasonable attorneys' fees and costs is appropriately given.

As a prevailing Title VII litigant, plaintiff's counsel is entitled to an interim award of attorney's fee of $15,155.00 plus Hawaii state sales tax of $606.20 and costs of $2829.72 for a total of $18,590.92. For purposes of appeal, this Court will follow the *Gardner* and *Suzuki* procedure of requiring a corporate security bond in the amount of the fees awarded to be posted by plaintiff's counsel.

Accordingly, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that plaintiff's application for interim attorneys' fees

and costs in the amount of $18,592.92 is hereby GRANTED.